Jones, J.,
 

 concurring. While concurring in this judgment upon the minor
 
 question,
 
 — that of laches, — ■ I regret that this court has not definitely passed upon the major question presented. The crucial question we are called upon to decide is this: Does Section 4785-91, General Code, permit the nomination by petition of one who had already been nominated at a party primary?
 

 
 *146
 
 This is a question of transcendental importance and we should not boggle at its solution. Upon it counsel' for both sides have trained their heaviest guns and to it they have devoted the greater part of their arguments. They deserve an answer. The Board of Elections, the respondent in this case, whose interpretation of the foregoing section was either rightful or wrongful, merits a decision in order that its course of action may be so charted by the state’s highest tribunal as to guide its future action in similar cases. We should not permit this to lie
 
 in nubibus
 
 whence, like Banquo’s ghost, it may arise to torment our election boards and the lesser courts in the future exercise of their administrative and judicial functions. The great body of our electorate also deserves an adjudication so that both party and independent groups may be advised of their political rights. In short, we should not shirk the judicial duty of deciding a dispute which, at least in my experience on the bench, presents a question of more grave importance than any other which I can now recall.
 

 The statute upon which the real controversy turns is Section 4785-91, General Code (113 Ohio Laws, 349), which, with its title, reads as follows:
 

 “Nominations op Independent Candidates:
 

 “Sec. 4785-91.
 

 “Section 91. Nominations of candidates for offices, in addition to the nominations made at party primaries, may be made by petitions signed for each candidate by qualified electors of the state or the district or county for which such candidates are nominated, # * # JJ )
 

 This section was embodied in a lengthy act relating to elections, passed April 5, 1929, and becoming effective January 1, 1930. In construing Section 4785-91 we should consider various sections touching the questions here involved and, as they are
 
 in pari materia,
 
 
 *147
 
 all sections relating to the subject, as well as the title, should be construed together.
 

 Title of act.
 
 Counsel for Leo H. Beckman give slight heed to the title of the act, and in their brief say: “These words form no part of the section itself.” For more than a century this court has consistently announced the principle that, while the title to a statute is no part of the law, yet recourse may be had to the title as an aid in the construction of the law.
 

 Steamboat Monarch
 
 v.
 
 Finley,
 
 10 Ohio, 384;
 
 Harris
 
 v.
 
 State, 57
 
 Ohio St., 92, 48 N. E., 284;
 
 DuBois
 
 v.
 
 Coen, Exr.,
 
 100 Ohio St., 17, 125 N. E., 121;
 
 Lexa
 
 v.
 
 Zmunt et al., Bd. of County Commrs.,
 
 123 Ohio St., 510, 176 N. E., 82.
 

 Counsel for Leo H. Beckman say that the words “independent candidates” have no dictionary meaning.
 

 They do have a dictionary meaning. The word “independent” is defined by lexicographers as being free and uncontrolled by others. It is thus defined in Webster’s Dictionary in referring to independency in politics.
 
 “Politics”
 
 — “not bound by party; exercising a free choice in voting with either or any party.”
 

 Under our present electoral system the Legislature has provided a set up for (a) party nominations where candidates are selected by a political party, and (b) for independent nominations where the candidates are selected by an independent body or group of electors. Section 4785-3
 
 (h
 
 and
 
 i),
 
 General Code.
 

 The statute recognizes two distinct classes of candidates, one seeking party support, the other seeking support of a group independent of parties. There is a natural inconsistency between an independent candidacy and a party candidacy. Common sense dictates that the same candidate cannot be both a party candidate and at the same time be independent of that party. The act plainly recognizes the distinction, because the declaration of a party candidate must set
 
 *148
 
 forth, as a prerequisite to his candidacy, that (instead of being independent) he must declare, not only that he is a party member, bnt must also declare that he intends “to vote for a majority of the candidates of such party at the forthcoming election. ’’ By the same section he is required to declare that, if nominated and elected, he “will support and abide by the principles enunciated” by that party “in its national and state platform.” Section 4785-71, General Code.
 

 Under the definition given above, how can it be claimed that the same individual can, at the same time, abide by the principles of a party and still be uncontrolled thereby? How can it be logically maintained that a party candidate who, as a legal prerequisite to his candidacy, is required to declare that he intends “to vote for a majority of the candidates of such party at the forthcoming election” and swears to that statement (Section 4785-71, General Code), can be independent and exercise “a free choice in voting with either or any party”? Any party candidate maintaining such an attitude would violate his statutory declaration, would stultify himself and would pursue a course which would have a tendency to perpetrate a fraud upon the electorate.
 

 There is another controlling reason clearly showing that the Legislature never intended that the same individual could at the same time be on the ballot both as a party candidate and as an independent candidate. Section 4785-94, General Code, provides that vacancies in party nominations on the ballot shall be filled by the party executive committee; but'vacancies on a ballot whose candidates are nominated by petition are to be filled by the committee of five representing the candidate.
 

 Now, should a vacancy occur in the present case, what body can fill the vacancy? The executive party committee and the petitioner’s committee could not both function in filling the vacancy. This in itself dis
 
 *149
 
 closes that it was not the legislative intent to permit the same individual to he a party candidate and an independent candidate at the same time. Such a situation would be avoided by the interpretation given to Section 4785-91, by counsel for the relator.
 

 Section 4785-69, General Code, also supports such an interpretation. That section provides that “No person who seeks
 
 party
 
 nomination for an office or position at a primary and fails to receive such nomination, shall be permitted to become a candidate at the following election for the same office by petition.”
 

 An independent candidate, nominated by a group, should be and was intended to be unaffected by party action, primary or otherwise. Yet if respondents’ contention be upheld, a party primary could destroy the candidacy of independent nominees. It surely was not intended that party action should render independent nominations inoperative; yet that would have been the case should Beckman have failed of nomination at the Democratic primary.
 

 But without relying on the foregoing sections of the election code, it would appear that by ordinary grammatical construction Section 4785-91, General Code, would require an interpretation which would not permit the nomination by petition of a man who had been nominated at a party primary. The storm center turns upon the italicized clause in that section, which reads as follows:
 

 “Nominations of candidates for offices,
 
 in addition to the nominations made at party primaries,
 
 may be
 
 made hy petitions
 
 * *
 

 When Beckman was nominated at the Democratic primary for County Recorder, his nomination thereafter by petition was not an
 
 additional
 
 nomination. No new or “added” (Webster) nomination was made.
 

 All the foregoing sections, when construed in the light of the title of the act, plainly indicate that the
 
 *150
 
 nominees of the independent group are free from party participation and free from party obligation; on the other hand, the party candidate is not free, since he has declared under oath that he “will support and abide by the principles enunciated by * #
 
 *
 
 [his] party in its national and state platform.”
 

 Had the Legislature intended to permit the same individuals to be nominated by petition and primary, it could easily have omitted the controversial clause, “in addition to the nominations made at party primaries”. Then there might be some persuasion in the argument that the same person could be nominated both by petition and by primary — for the statute would have simply read, “Nominations of candidates for offices may be made by petition,” etc. But instead of doing so it incorporated the clause in the act for the patent purpose of providing that petition nominations must be composed of individuals, in addition to or other than those nominated at party primaries.
 

 The election law presents a fair and comprehensive system, whereby if various candidates seeking party nominations are not satisfactory to an independent group, they can by petition present other candidates who are; and on the other hand, if the independent voter is satisfied with a party nominee his privilege of voting for such nominee is vouchsafed to him without twice placing his name in separate columns on the ballot. If the question of legislative policy be considered it surely could not be the legislative intent to permit various groups to present petitions
 
 ad infinitum,
 
 thereby so cluttering the ballot as to confuse the electorate and make it costly and impracticable.
 

 As I view the case with its resultant judgment, the legal profession cannot think otherwise than that this court, though it has not definitely done so, has inferentially decided that the same candidate cannot be nominated at a party primary and also by petition. "Why?
 
 *151
 
 For the cogent reason that if we found Beckman was entitled
 
 to
 
 nomination on both tickets, that would be dispositive of the case and there would be no need for considering the question of laches. And furthermore, since the court has decided the case solely upon laches, the connotation naturally follows that were it not for laches the relator’s contention would prevail. The application of the equitable doctrine of laches presupposes a right which one could exercise, if he were not debarred from exercising it because of inexcusable delay in its enforcement. There is a strong implication in this judgment that, had this relator exercised his right seasonably by proper methods, we would have upheld his contention and his interpretation of the section here involved.